UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEITH LONGWISH,

        Plaintiff,                              Hon. Janet T. Neff

v.                                               Case No. 1:12 CV 53

ISAAC ALEXIS, et al.,

        Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (Dkt. #22). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be **granted**.


## BACKGROUND

The following allegations are contained in Plaintiff's unverified complaint. (Dkt. #1). Testing performed in May 2010, revealed that Plaintiff experienced fifty percent and sixty percent blockage in his arteries. Plaintiff's cardiologist concluded that "nothing should be done." Plaintiff thereafter experienced chest pains on several occasions. On September 4, 2011, Plaintiff participated in a stress test, the results of which were "positive." On September 6, 2011, Plaintiff's cardiologist recommended that Plaintiff undergo a heart catheterization procedure, but such was denied by "the Director of Corizon Prison Health Services."

On October 14, 2011, Plaintiff was experiencing chest pain which he reported to prison staff. A nurse responded by informing Plaintiff that Dr. Alexis and Dr. Edelman directed that Plaintiff "was not to be sent to the outside hospital." On four occasions between October 23, 2011, and November 13, 2011, Plaintiff experienced chest pain in response to which "nothing [was] done."

On November 16, 2011, Plaintiff was given his medications which "tasted like perfume." When Plaintiff brought this to the attention of nurse Angel Sheppard, she responded that she "didn't care" if Plaintiff took his medication because he "was going to die anyways." Following this encounter, "when ever LPN Sheppard works [Plaintiff] don't get [his] meds because she refu[s]es to let another nurse give [him his] meds."

On December 30, 2011, Plaintiff was again experiencing chest pain which he reported to prison staff. Plaintiff was given several nitroglycerin pills and his blood pressure monitored. Plaintiff was later informed that Dr. Alexis and Dr. Anseri directed "that nothing was going to be done."

Plaintiff initiated this action on January 19, 2012, against the Michigan Department of Corrections Bureau of Health Care Services, Dr. Isaac Alexis, Dr. Shen Anseri, Unknown Edelman, and Angel Sheppard. Plaintiff alleges that he was denied appropriate medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff seeks five million dollars in damages as well as an injunction ordering the Bureau of Health Care Services to provide requested medical treatment. Plaintiff's claims against the Michigan Department of Corrections Bureau of Health Care Services have since been dismissed. Defendants Alexis, Anseri, and Edelman now move for summary judgment.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, *see Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *Minadeo*, 398 F.3d at 761, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same).

Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

Plaintiff has asserted three claims against Defendants Alexis, Anseri, and Edelman. Plaintiff asserts that Defendant Edelman denied authorization for a cardiac catheterization procedure in September 2011. Plaintiff next asserts that on October 14, 2011, Defendants Edelman and Alexis refused to transport Plaintiff to a hospital for treatment. Finally, Plaintiff asserts that on December 30, 2011, Defendants Alexis and Anseri refused him medical treatment. Plaintiff asserts that Defendants' conduct violated his right to be free from cruel and unusual punishment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001). The analysis by which a defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. A "serious medical need," sufficient to implicate the Eighth Amendment, is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison*

*v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). If the objective test is met, the Court must then determine whether the defendant possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, the plaintiff "must present evidence from which a trier of fact could conclude 'that the official was subjectively aware of the risk' and 'disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004) (citing *Farmer*, 511 U.S. at 829, 847).

To the extent, however, that the plaintiff simply disagrees with the treatment he received, or asserts that he received negligent care, the defendant is entitled to summary judgment. *See Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (citing *Estelle*, 429 U.S. at 105-06) ("[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner"); *Brown v. Kashyap*, 2000 WL 1679462 at *1 (6th Cir., Nov. 1, 2000) (citing *Estelle*, 429 U.S. at 106) ("allegations of medical malpractice or negligent diagnosis and treatment" do not implicate the Eighth Amendment); *Mingus v. Butler*, 591 F.3d 474, 480 (6th Cir. 2010) (to prevail on an Eighth Amendment denial of medical treatment claim, "the inmate must show more than negligence or the misdiagnosis of an ailment"); *Robbins v. Black*, 351 Fed. Appx. 58, 62 (6th Cir., Nov. 3, 2009) ("mere negligence or malpractice is insufficient to establish an Eighth Amendment violation").

In support of their motion for summary judgment, Defendants have submitted evidence of the extensive medical treatment Plaintiff has received while incarcerated. This evidence reveals the

following.  On January 24, 2010, Plaintiff complained of chest pain after which he was transported to an outside hospital (i.e., a non-MDOC facility).  (Dkt. #24 at 8-12[1]).  The results of a physical examination were unremarkable and x-rays of Plaintiff's chest were negative.  (Dkt. #24 at 8-10).  The results of a cardiac catheterization procedure revealed "minor coronary artery disease," but were otherwise "negative."  (Dkt. #24 at 8-9).  Plaintiff's medication regimen was modified and doctors recommended that Plaintiff be treated with "aggressive secondary prevention."  (Dkt. #24 at 8-10).

On February 22, 2010, Plaintiff complained of chest pain after which he was transported to an outside hospital.  (Dkt. #24 at 27-29).  The results of a physical examination were unremarkable and the results of a "comprehensive metabolic panel" were "essentially normal."  (Dkt. #24 at 28-29).  A CT scan of Plaintiff's head was "negative" and an MRI of Plaintiff's head revealed "no evidence of acute infarct, hemorrhage, or mass lesion."  (Dkt. #24 at 40).  Plaintiff's medication regimen was subsequently modified.  (Dkt. #24 at 31-34).

Treatment notes dated March 23, 2010, indicate that Plaintiff "discontinued his medications last week because he does not want to come to the medline to have those medications." (Dkt #24 at 1118).

On May 2, 2010, Plaintiff participated in a cardiac catheterization procedure, the results of which revealed: (1) 40-50 percent left anterior descending in-stent restenosis[2] and 40 percent distal left circumflex artery in-stent restenosis, otherwise "widely patent coronary arteries;" (2) normal left ventricular systolic and diastolic function; and (3) normal aortic root angiogram.  (Dkt. #24 at 73-74).

---

[1] The citations to this particular exhibit refer to the Bates numbers located in the lower right hand corner of the pages of the exhibit.

[2] Restenosis refers to the formation of new blockages within an artery, after the artery has been treated with angioplasty or stenting.  See Restenosis, available at http://heartdisease.about.com/od/angioplastystents/g/restenosis.htm (last visited on November 27, 2012).

The doctor concluded that Plaintiff's "coronary artery disease needs to be managed medically." (Dkt. #24 at 74). The results of a "comprehensive metabolic profile" performed the following day were "entirely normal." (Dkt. #24 at 81).

On June 19, 2010, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt. #24 at 107-17). The results of a troponin test[2] were "negative." (Dkt. #24 at 107). Plaintiff was diagnosed with "atypical angina" in response to which his medication regimen was modified. (Dkt. #24 at 107-17).

On July 16, 2010, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt. #24 at 133-56). The results of a physical examination were unremarkable. (Dkt. #24 at 133-40). The results of a troponin test were "normal." (Dkt. #24 at 146). Plaintiff's doctors "recommended only medical management and better control for [Plaintiff's] blood pressure." (Dkt. #24 at 155).

On August 20, 2010, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt. #24 at 157-62). The results of a physical examination were unremarkable and the results of a troponin test were "within normal limits." (Dkt. #24 at 157-62). Doctors concluded that Plaintiff's chest pain was "likely of gastrointestinal etiology." (Dkt. #24 at 159). Plaintiff's numerous medications were continued. (Dkt. #24 at 157-62).

On November 2, 2010, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt. #24 at 164-84). The results of a physical examination were unremarkable. (Dkt. #24 at 164-78). An EKG examination revealed "normal sinus rhythm." (Dkt. #24 at 166). X-rays of

---

[2] A troponin test measures the levels of troponin, a protein that is "released when the heart muscle has been damaged," for example following a heart attack. *See Troponin Test*, available at http://www.nlm.nih.gov/medlineplus/ency/article/007452.htm (last visited on November 28, 2012). The more damage that the heart suffers, the greater the amount of troponin will be present in the blood. *Id.*

Plaintiff's chest revealed: (1) the "heart size is normal;" (2) the "thoracic aorta is unremarkable;" (3) "no acute abnormality of the mediastinum or pulmonary vasculature;" and (4) "on comparison with the prior exam, there has been no significant interval change." (Dkt. #24 at 179). The doctor concluded that Plaintiff was experiencing "no acute cardiopulmonary process." (Dkt. #24 at 180). The results of a troponin test were "normal." (Dkt. #24 at 183-84). Plaintiff participated in a myocardial perfusion stress test, the results of which revealed: (1) "no evidence of ischemia;" (2) "no evidence of infarction;" and (3) "no significant wall motion abnormality." (Dkt #24 at 191-92). Plaintiff's cardiologists concluded that "no further recommendation is needed or workup and most probably that [Plaintiff's] pain is secondary either to gastroesophageal reflux disease or musculoskeletal pain." (Dkt #24 at 193).

On November 12, 2010, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt #24 at 200-10). The results of a physical examination were unremarkable. (Dkt #24 at 201-02). The results of an EKG examination were "unremarkable." (Dkt #24 at 202). The results of a troponin test were "normal." (Dkt #24 at 183-84, 202). X-rays of Plaintiff's chest revealed "no acute cardiopulmonary process." (Dkt #24 at 206).

In 2011, Plaintiff was reassigned to the Duane Waters Medical Center, part of the Michigan Department of Corrections prison complex in Jackson, Michigan, "to provide close monitoring of his medical condition." (Dkt. #22, Exhibit B; Dkt. #25).

On July 10, 2011, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt #24 at 218-36). X-rays of Plaintiff's chest revealed "no acute cardiopulmonary process." (Dkt #24 at 224). Multiple troponin tests were all "normal." (Dkt #24 at 225-27). An examination the following morning revealed that Plaintiff was "completely asymptomatic with no

problems reported overnight." (Dkt #24 at 234). Plaintiff's medication regimen was modified. (Dkt #24 at 218-36).

On August 23, 2011, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt #24 at 239-61). The results of a physical examination were unremarkable. (Dkt #24 at 242-43). An EKG examination revealed "normal sinus rhythm" with "no acute ischemic changes" and chest x-rays revealed "no acute cardiopulmonary processes." (Dkt #24 at 243, 261). Multiple troponin tests were all "normal." (Dkt #24 at 251-53). Dr. Edelman determined that cardiac catheterization was "unjustified" under the circumstances. (Dkt #24 at 261).

On September 3, 2011, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt #24 at 272-91). X-rays of Plaintiff's chest were "negative." (Dkt #24 at 276). Plaintiff participated in a myocardial perfusion stress test the results of which revealed: (1) "a small area of stress-induced myocardial ischemia involving apical inferior wall of the left ventricle;" (2) "no evidence of infarction;" and (3) "mild hypokinesia involving apical inferior wall of the left ventricle." (Dkt #24 at 284). Multiple troponin tests were all "normal." (Dkt #24 at 290-91).

On September 28, 2011, Plaintiff was transported to an outside hospital after complaining of chest pain. (Dkt #24 at 307-46). X-rays of Plaintiff's chest revealed "no active disease in the chest." (Dkt #24 at 337). Multiple troponin tests were "normal." (Dkt #24 at 335-36). Dr. Hussunizadeh recommended that Plaintiff undergo a cardiac catheterization procedure, but such was denied by Dr. Edelman. (Dkt #24 at 345).

Plaintiff's doctors later determined that Plaintiff's chest pain was not sufficiently responding to "maximum medical therapy." (Dkt #24 at 356). Accordingly, on April 15, 2012, Plaintiff underwent a heart catheterization and angioplasty procedure. (Dkt #24 at 356-402).

Defendants have also submitted medical records revealing that Plaintiff was regularly examined, treated, and observed by MDOC medical personnel. (Dkt. #24 at 1104-1869).

**I.      Denial of Catheterization Procedure**

As noted above, on September 3, 2011, Plaintiff participated in a myocardial perfusion stress test the results of which revealed mild abnormalities. One of Plaintiff's cardiologists subsequently recommended that Plaintiff undergo a cardiac catheterization procedure, but such was denied by Dr. Edelman.

In support of his motion for summary judgment, Dr. Edelman has submitted an affidavit in which he asserts that his decision to deny authorization for this particular procedure was based on his professional assessment of "multiple objective tests used for evaluating the need to cardiac testing." (Dkt. #22, Exhibit B). The doctor asserts that Plaintiff, "based on the objective scoring of these tests, which are commonly used as the standard of care to determine the need for such cardiac testing, never met the criteria for cardiac catheterization." Dr. Edelman further asserts (and the medical evidence detailed above confirms) that Plaintiff's "troponin levels and other cardiac enzymes never indicated he had myocardial infarction or other cardiac dangers, and his EKG, chest x-rays, and other testing was consistently normal." *Id.*  Moreover, as previously noted, once Plaintiff's doctors concluded that Plaintiff's condition was not sufficiently responding to medical therapy, approval was given for Plaintiff to undergo a heart catheterization and angioplasty procedure. Plaintiff has submitted no evidence to the contrary.

As the voluminous medical evidence submitted by Defendants amply demonstrates, Plaintiff was not denied medical treatment. To the contrary, Plaintiff received regular medical treatment

within MDOC facilities and was frequently transported to an outside hospital in response to his many complaints of chest pain. Plaintiff merely disagrees with the treatment he received and, by extension, Dr. Edelman's professional medical judgment. As discussed above, however, where a prisoner merely disagrees with the treatment he received or believes he received negligent care, such simply fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendant Edelman's motion for summary judgment be granted as to this claim.

**II.         Denial of Requested Medical Treatment**

Plaintiff asserts that on October 14, 2011, he was experiencing chest pain, but that Defendants Edelman and Alexis refused to transport him to an outside hospital for treatment. Plaintiff also asserts that on December 30, 2011, he was experiencing chest pain, in response to which Defendants Alexis and Anseri directed that "nothing was going to be done."

With respect to the alleged October 14, 2011 incident, Plaintiff does not allege that he was denied treatment, only that his request to be transported to an outside hospital was denied. First, as Dr. Alexis notes in his affidavit, there is absolutely no evidence in the record that Plaintiff reported experiencing chest pain on or about October 14, 2011. (Dkt. #22, Exhibit A; Dkt. #25). As Dr. Alexis further asserts (and which the medical evidence confirms), Plaintiff "was hospitalized on multiple occasions regarding cardiac issues at Allegiance Hospital in Jackson, Michigan, and was hospitalized in the prison hospital in Jackson, Michigan, for monitoring of his cardiac condition for a number of months in 2011-2012." (Dkt. #25). Dr. Alexis asserts that Plaintiff "was hospitalized at the Duane Waters Medical Center to provide close monitoring of his medical condition and medication and to avoid multiple trips to the hospital." (Dkt. #25). Dr. Alexis asserts that "the care provided at Duane

Waters was within the standard of care and what myself and other medical staff believed appropriate to [Plaintiff's] condition." (Dkt. #25). Dr. Alexis further notes that "the pattern of [Plaintiff's] trips to hospital raised concerns of drug-seeking behavior for the morphine regularly provided in ER to treat his chest pain."[2] (Dkt. #25). Plaintiff has submitted no evidence to the contrary.

As for the alleged denial of treatment on December 30, 2011, the medical evidence reveals that Plaintiff was, in fact, examined by a nurse in response to Plaintiff's complaints of chest pain. (Dkt #24 at 1858-59, 1869). The results of the nurse's examination were unremarkable and when informed of such, Dr. Alexis instructed the medical staff to "continue to watch [Plaintiff] for further problems." (Dkt #24 at 1858-59, 1869).

In sum, with respect to these two alleged incidents, Plaintiff simply disagrees with the care he received and, by extension, his care providers' professional medical judgment. Again, where a prisoner merely disagrees with the treatment he received or believes he received negligent care, such simply fails to implicate the Eighth Amendment. Accordingly, the undersigned recommends that Defendants' motion for summary judgment be granted as to these particular claims.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendants' Motion for Summary Judgment</u>, (dkt. #22), be **granted**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

---

[2] This concern is certainly reasonable considering that the tests performed on Plaintiff's many trips to the hospital revealed no evidence of cardiac event.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                        Respectfully submitted,

Date: December 5, 2012                          /s/ Ellen S. Carmody
                                                   ELLEN S. CARMODY
                                                   United States Magistrate Judge