UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


KEITH LONGWISH,

    Plaintiff,                                    Hon. Janet T. Neff

v.                                                Case No. 1:12 CV 53

ISAAC ALEXIS, et al.,

    Defendants.
_____/


## REPORT AND RECOMMENDATION

This matter is before the Court on <u>Defendant Shepherd's Motion for Dismissal</u>. (Dkt. #41). Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendant's motion be **granted** and this matter **terminated**.


## BACKGROUND

The following allegations are contained in Plaintiff's unverified complaint. (Dkt. #1). Testing performed in May 2010, revealed that Plaintiff experienced 50-60 percent blockage in certain of his arteries. Plaintiff's cardiologist concluded that "nothing should be done." Plaintiff thereafter experienced chest pains on several occasions. On September 4, 2011, Plaintiff participated in a stress test, the results of which were "positive." On September 6, 2011, Plaintiff's cardiologist recommended that Plaintiff undergo a heart catheterization procedure, but such was denied by "the Director of Corizon Prison Health Services."

On October 14, 2011, Plaintiff was experiencing chest pain which he reported to prison staff. A nurse responded by informing Plaintiff that Dr. Alexis and Dr. Edelman directed that Plaintiff "was not to be sent to the outside hospital." On four occasions between October 23, 2011, and November 13, 2011, Plaintiff experienced chest pain in response to which "nothing [was] done."

On November 16, 2011, Plaintiff was given his medications which "tasted like perfume." When Plaintiff brought this to the attention of nurse Angel Shepherd, she responded that she "didn't care" if Plaintiff took his medication because he "was going to die anyways." Following this encounter, "when ever LPN Shep[herd] works [Plaintiff] don't get [his] meds because she refu[s]es to let another nurse give [him his] meds."

On December 30, 2011, Plaintiff was again experiencing chest pain which he reported to prison staff. Plaintiff was given several nitroglycerin pills and his blood pressure monitored. Plaintiff was later informed that Dr. Alexis and Dr. Anseri directed "that nothing was going to be done."

Plaintiff initiated this action on January 19, 2012, against the Michigan Department of Corrections Bureau of Health Care Services, Dr. Isaac Alexis, Dr. Shen Anseri, Dr. Edelman, and Nurse Angel Shepherd. Plaintiff alleges that he was denied appropriate medical treatment in violation of his Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff seeks five million dollars in damages as well as an injunction ordering the Bureau of Health Care Services to provide him with requested medical treatment. Plaintiff's claims against the Michigan Department of Corrections Bureau of Health Care Services have since been dismissed. Plaintiff's claims against Defendants Alexis, Anseri, and Edelman have likewise been dismissed. Defendant Shepherd now moves for relief on the ground that she is entitled to qualified immunity. Plaintiff has failed to respond to the present motion.

## **LEGAL STANDARD**

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of harassing litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). As is well recognized, they can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages, and if unjustified lawsuits are quickly terminated. *Id.* Generally, when government officials perform discretionary functions, they are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also, Behrens v. Pelletier*, 516 U.S. 299, 301 (1996). The question whether a defendant enjoys qualified immunity is a question of law for the Court to resolve. *See Virgili v. Gilbert*, 272 F.3d 391, 392 (6th Cir. 2001).

When evaluating claims of qualified immunity, the Court employs a two-step analysis. The Court first determines "whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). If such fail to establish a violation of the plaintiff's constitutional rights, the defendant is entitled to immunity. *See Callahan*, 555 U.S. at 232. On the other hand, if the facts establish a violation of the plaintiff's constitutional rights, the Court must then determine whether the right in question was "clearly established" at the time the defendant acted. The defendant is entitled to qualified immunity unless his "conduct violated a clearly established constitutional right." *Id.* The inquiry whether a particular right was clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Moldowan v. City of Warren*, 578 F.3d 351, 375 (6th Cir. 2009) (citing *Saucier*, 533 U.S. at 201). The contours of the right in question "must be

sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Fisher v. Harden*, 398 F.3d 837, 845 (6th Cir. 2005) (quoting *Saucier*, 533 U.S. at 202). The focus of this inquiry is "on whether the officer had fair notice that her conduct was unlawful." *Lyons v. City of Xenia*, 417 F.3d 565, 579 (6th Cir. 2005).

Where neither the motion for qualified immunity nor the opposition thereto is supported by evidence, the first step of the qualified immunity analysis focuses on the allegations in the plaintiff's complaint and whether such state a claim for violation of the plaintiff's constitutional rights. If, on the other hand, the motion for qualified immunity and/or the opposition thereto are supported by evidence, such must be considered pursuant to the summary judgment standard. Thus, if the evidence establishes that the defendant did not violate the plaintiff's constitutional rights, qualified immunity is appropriate. *See, e.g., Scott v. Harris*, 550 U.S. 372, 377-86 (2007) (officer entitled to qualified immunity where evidence was such that "no reasonable jury" could have concluded that officer violated the plaintiff's constitutional rights). Likewise, if the right in question was not "clearly established" at the time the defendant acted, the defendant is entitled to qualified immunity.

Generally, to find a clearly established constitutional right, the district court "must find binding precedent by the Supreme Court, its Court of Appeals or itself." *Fisher*, 398 F.3d at 845 (quoting *Ohio Civil Serv. Employees Ass'n v. Seiter*, 858 F.2d 1171, 1177-78 (6th Cir. 1988)). In extraordinary circumstances, however, the decisions of other courts may suffice if such decisions "both point unmistakably to the unconstitutionality of the conduct complained of and are so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Fisher*, 398 F.3d at 845-46 (quoting *Seiter*, 858 F.2d at 1177). A single idiosyncratic opinion from another circuit's court of

appeals, however, is insufficient to put a defendant on notice of how the Sixth Circuit might decide the issue in question. *See Davis v. Holley*, 835 F.2d 1175, 1182 (6th Cir. 1987).

In determining whether a defendant is entitled to qualified immunity, the focus is on the objective legal reasonableness of his actions in light of clearly established law as it existed when he engaged in the challenged conduct. *See Anderson*, 483 U.S. at 640; *Harlow*, 457 U.S. at 818; *Fisher*, 398 F.3d at 845. Accordingly, the Court must determine "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Fisher*, 398 F.3d at 845 (quoting *Saucier*, 533 U.S. at 202).

Finally, while it "is often appropriate" to evaluate qualified immunity claims by analyzing the two analytical steps in sequence, such is no longer mandated. *See Callahan*, 555 U.S. at 236. As the *Callahan* Court stated, "[t]he judges of the district courts. . .should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.*

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint fails to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right for relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court more recently held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." If the complaint simply pleads facts that are "merely

consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed:

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . .Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . .Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the wellpleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not "show[n]" - "that the pleader is entitled to relief."

*Id.* at 678-79 (internal citations omitted).

## ANALYSIS

Plaintiff makes two allegations against Defendant Shepherd. Plaintiff alleges that when he reported that his medications "tasted like perfume," Shepherd responded that she "didn't care" if Plaintiff took his medication because he "was going to die anyways." Plaintiff further alleges that "when ever LPN Shepherd works [Plaintiff] don't get [his] meds because she refu[s]es to let another nurse give [him his] meds." Even interpreted indulgently in Plaintiff's favor neither of these allegations states a claim on which relief may be granted.

While it may be unprofessional for a nurse to tell a prisoner that she does not care if he takes his medicine because he is "going to die anyways," such comments do not violate the prisoner's constitutional rights. *See, e.g., Jones-Bey v. Johnson*, 248 Fed. Appx. 675, 677-78 (6th Cir., Sept. 21,

2007) (allegations that a prison official employed "racial slurs and other derogatory language...although unprofessional and reprehensible, does not rise to the level of constitutional magnitude"); *Gannaway v. Berks County Prison*, 439 Fed. Appx. 86, 91 (3rd Cir., July 18, 2011) ("simple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws"). Thus, this particular allegation fails to state a claim on which relief may be granted.

Plaintiff's second claim, that Defendant Shepherd refused his request to have his medication delivered by a different individual, likewise fails to state a claim. *See Allen v. Shawney*, 2011 WL 5838480 at *6 (E.D. Mich., Oct. 5, 2011) ("[t]he Eighth Amendment guarantees a prisoner constitutionally adequate medical treatment; it does not provide her with a right to treatment by a doctor of her choosing"); *Quezada v. Ercole*, 2011 WL 3251811 at *7 (S.D.N.Y., July 29, 2011) (same); *Goolsby v. Ridge*, 2011 WL 2006303 at *17 (S.D. Cal., May 23, 2011) (same); *United States v. Rovetuso*, 768 F.2d 809, 825 (7th Cir. 1985) (same).

In sum, Plaintiff's allegations against Defendant Shepherd fail to state a claim upon which relief may be granted. Accordingly, the undersigned recommends that Defendant Shepherd's motion to dismiss be **granted**.

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that <u>Defendant Shepherd's Motion for Dismissal</u>, (Dkt. #41), be **granted** and this matter **terminated**. The undersigned further recommends that appeal of this matter would not be taken in good faith. *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997); 28 U.S.C. § 1915(a)(3).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

                                            Respectfully submitted,

Date: June 14, 2013　　　　　　　　　　　　　　/s/ Ellen S. Carmody
　　　　　　　　　　　　　　　　　　　　　　　ELLEN S. CARMODY
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge